UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **KIMBERLY PETERSON RABUN** | **CIVIL ACTION 12-2482** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **GENERAL MOTORS, LLC** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 17] filed by Defendant General Motors, LLC ("GM"). For the following reasons, GM's Motion for Summary Judgment is GRANTED.

### I. FACTUAL AND PROCEDURAL HISTORY

This case arises from an incident in which Plaintiff Kimberly Peterson Rabun ("Rabun") was injured by a GM vehicle.

Rabun purchased a 2011 Chevrolet Tahoe, VIN #1GNSCAE04BR100476, on July 23, 2010, from Ryan Chevrolet ("Ryan") in Monroe, Louisiana.

On February 24, 2011, Rabun was involved in a car accident. The rear of Rabun's Tahoe was damaged when it struck the front of a 1993 Buick Roadmaster, driven by Ricky Simpson ("Simpson").[1] Simpson's car sustained $1,541.34 in damages. Rabun's Tahoe sustained mild to moderate damage. As a result of the accident, the Tahoe's rear windshield wiper arm was

---

[1] There is some question whether Rabun backed into Simpson's car, or Simpson drove into the rear of Rabun's Tahoe. Regardless, the rear of Rabun's Tahoe and the front of Simpson's car sustained damage.

repaired on March 10 and May 12, 2011. No other repairs were made.

On June 20, 2011, while in Morehouse Parish, Rabun was injured when the rear liftgate on her Tahoe collapsed on her. According to Rabun, she was unloading groceries from the rear of the Tahoe with the liftgate fully open when she heard a noise like a gunshot or a car backfiring. The liftgate fell, hitting Rabun and pushing her into the rear cargo area. Rabun suffered closed fractures to her second and third ribs bilaterally, as well as a cervical disc injury.

The 2011 Tahoe is equipped with a manual liftgate with a back glass wiper system. The counterbalance for the liftgate is provided by two nitrogen-gas-filled support struts. The liftgate's struts are located directly above the area of the Tahoe impacted in the February 24, 2011 accident. Two functioning struts are necessary to support the liftgate. The liftgate is designed to free rise once it opens in the range of 20-30%. Prior to the June 20, 2011 incident, Rabun had not experienced any problems with the liftgate. She had been able to raise and lower the liftgate twice earlier on the day of the incident.

On June 23, 2011, Ryan Chevrolet replaced the rear liftgate struts under the vehicle's warranty coverage. Rabun advised the service department of the liftgate failure, that the liftgate fell on her, and that she and her husband were unable to raise the liftgate after the failure. She also advised the service department that the liftgate had been difficult to pen. However, she did not advise Ryan of her intent to file a lawsuit. Ryan employee, Cason Key, explained to Rabun that liftgate failures, such as she described, did not typically happen in newer vehicles. The June 23, 2011 invoice indicates that the struts were weak/worn.

Because this was a warranty repair, the replaced struts were tagged and stored for 15 days. If a customer indicates an intent to file a lawsuit or attorney involvement, Ryan notifies GM, but

Rabun did not make this notification. If a customer requests, Ryan will return replaced parts, but Rabun did not make this request. Instead, consistent with its standard policy on warranty repairs, Ryan discarded the replaced struts at the end of the 15-day period.

On June 27, 2011, Rabun reported the incident to GM, explaining that she was injured when the liftgate on her Tahoe collapsed. However, she did not inform GM that she intended to file a lawsuit or had retained an attorney.

Around May 2012, Rabun traded the Tahoe into Ryan Chevrolet.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255

### B. Louisiana Products Liability Act

Under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. § 9:2800.51, *et seq*, the manufacturer of a product shall be liable to a claimant for damage caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use. La. Rev. Stat. 9:2800.54. A manufacturer is liable if its product is found unreasonably dangerous in one of four ways: construction or composition, design, inadequate warning or nonconformity with an express warranty. *Holloway v. Midland Risk Ins. Co.*, No. 36262-CA (La. App. 2 Cir. 2002), 832 So.2d 1004, 1011 (citing *Young v. Logue*, 94-0585 (La. App. 4th Cir.5/16/95), 660 So.2d 32). Rabun asserts all four types of claims against GM.

GM moves for summary judgment on all claims, contending that Rabun cannot establish that the Tahoe was unreasonably dangerous. GM asserts that Rabun cannot meet this burden because the struts are not available for analysis, and her expert, Dr. Leighton Sisson ("Sisson"), admits that (1) he has no prior experience with struts; (2) he did not perform the necessary tests, protocols or inspections to support his opinion; (3) he holds no opinions to support a conclusion that the Tahoe was unreasonably dangerous under any of the four theories; and (4) the Tahoe was not in the same condition at the time of the incident in question as it was when it left the factory.

A plaintiff who contends that a product is unreasonably dangerous in construction or

composition must provide evidence that the "characteristic of the product condition that renders it unreasonably dangerous" existed "at the time the product left the control of its manufacturer." La. Stat. Ann. 9:2800.54 C. Likewise, if a plaintiff contends that a product has a design defect or had an inadequate warning, she must also provide evidence that "[t]he characteristic of the product that renders it unreasonably dangerous" existed "at the time the product left the control of the manufacturer or result[ed] from a reasonably anticipated alteration or modification of the product." *Id.* Finally, "[a] manufacturer is not required to provide an adequate warning about his product when . . . [t]he product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics . . ." La. Rev. Stat. 9:2800.57.

It is undisputed that Ryan discarded the struts and that they are unavailable for examination. Rabun admits that her expert, Dr. Leighton Sisson, cannot offer direct evidence to support his opinion that the liftgate failed because of a defect in the manufacture and/or installation of the struts.

However, Rabun asserts, first, that she can establish that the Tahoe was "unreasonably dangerous when it left the hands of the manufacturer through the application of the doctrine of *res ipsa loquitor*." [Doc. No. 21, p. 1 (italics added)]. *Res ipsa loquitur* is an evidentiary doctrine that allows a presumption of negligence based on circumstantial evidence. *Harper v. Advantage Gaming Co.,* 38,837, p. 11 (La. App. 2 Cir. 08/18/04); 880 So. 2d 948, 953. As a general rule, negligence is not to be presumed; since the *res ipsa loquitur* doctrine is an exception to this rule, it "must be sparingly applied." *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1362 (La. 1992). The purpose of the doctrine is to provide a means of presenting a *prima facie* case of negligence in the

absence of direct evidence and thus it is unavailable if there is direct evidence of negligence.[2] *See Larkin v. State Farm Mut. Auto. Ins. Co.*, 97 So. 2d 389, 392 (La. 1957); *Linnear v. Centerpoint Energy*, 2006-3030, p. 13-14 (La. 09/05/07); 966 So. 2d 36, 42, 45. The doctrine of *res ipsa loquitor* may be applicable if three criteria are satisfied:

(1)  the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part;

(2)  the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and

(3)  the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff.

*Id.,* 2006–3030 at p. 6–7; 966 So.2d at 44.

With regard to the second criteria, a plaintiff need not negate all possible causes, but she must present evidence that "excludes other reasonable hypotheses with a fair amount of certainty." *State Farm Mut. Auto. Ins. Co. v. Wrap–On Co., Inc.*, 626 So.2d 874, 877 (La. App. 3 Cir. 1993). That is, a plaintiff's evidence is sufficient when "the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant." *Jurls v. Ford Motor Co.*, 2000–32,125, p. 8 (La. App. 2 Cir. 1/6/00); 752 So.2d 260, 265. A plaintiff must not only exclude inference of her own responsibility, but also "the responsibility of others besides defendant." *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 2005–0257, p. 20–21 (La. 9/6/06); 938 So.2d 35, 50.

The Court recognizes that the circumstances surrounding Rabun's injuries are unusual. GM's expert testified that liftgate struts "do not fail catastrophically after a normal open cycle,"

---

[2]Direct evidence is "[e]vidence in the form of testimony from a witness who actually saw, heard or touched the subject of questioning." BLACK'S LAW DICTIONARY 460 (6th ed. 1990).

which is exactly what Rabun asserts happened in this case.³ [Doc. No. 17, Expert Report of Victor J. Hakim, p. 6]. Such a dispute as to the facts might normally render summary judgment inappropriate. However, the Court finds that Rabun cannot rely on the doctrine of *res ipsa loquitor* to prove the unreasonably dangerous condition of the Tahoe because she has not met her burden on the second criteria. Both GM's expert and Rabun's own expert, Dr. Sisson, agree that the Tahoe was not in the same condition it left the manufacturer because it was involved in an accident in February, 2011, approximately four months prior to the liftgate failure. The impact to the rear of the Tahoe was just below the struts, as evidenced by two repairs to the rear windshield wiper arm. Without the struts to examine, plaintiff cannot provide sufficient evidence to exclude the reasonable possibility that the impact of the February 2011 accident, rather than defective struts, was the cause of the liftgate failure.

      Even if Rabun could somehow overcome the fact that the struts are not available for analysis, the testimony of Dr. Sisson is not sufficient to support the application of the *res ipsa loquitor* doctrine. Dr. Sisson has no prior experience with Chevrolet Tahoe rear liftgate struts, and he performed no calculations, protocols, tests, or inspections of the subject Tahoe or an exemplar. Dr. Sisson could not identify a specific defect, but found only that the old struts on Rabun's Tahoe failed, were replaced, and now the new struts work. Such testimony is insufficient to meet Rabun's burden.

      Rabun also argues that a genuine issue of material fact for trial exists under the spoilation of evidence doctrine. She contends that the Court should find that spoilation occurred and that, as

---

      ³Notably, Rabun testified that the liftgate opened normally, but she also advised the service department at Ryan that the liftgate had been difficult to open, suggesting that the liftgate was not operating in an entirely normal fashion.

an appropriate remedy for GM's bad conduct, there should be an adverse inference against GM.

When a party alleges spoilation of evidence, the United States Court of Appeals for the Fifth Circuit has held that an adverse inference drawn from the destruction of evidence must be predicated on bad conduct by the defendant. *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975); *see also Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999) (citing same).

In this case, Rabun makes no allegations of bad faith on the part of GM in failing to preserve the struts. Rather, Rabun asserts that she notified Ryan of her injuries at the time her Tahoe was repaired and that she later notified GM of her injuries four days later. At the time she notified GM, there were 11 days remaining in the 15-day period that parts are normally retained by the dealership following a warranty repair. Since GM and Ryan knew of her injuries, she contends that GM should have known that the struts were relevant evidence to be preserved and should have contacted Ryan to instruct it to preserve the struts. However, there is no evidence that Ryan or GM was aware that Rabun intended to file a lawsuit or had retained an attorney, she did not request them to keep the struts, nor did she request that the struts be provided to her. Without any evidence of bad faith on the part of GM, it is not proper for this Court to give an adverse inference instruction. Thus, Rabun cannot meet her burden through application of the spoilation of evidence doctrine.

### III.  CONCLUSION

For the foregoing reasons, GM's Motion for Summary Judgment [Doc. No. 17] is

GRANTED, and Rabun's claims are DISMISSED WITH PREJUDICE.[4]

MONROE, LOUISIANA, this 22nd day of August, 2013.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4] In light of the Court's Ruling, it is unnecessary to address GM's pending motions in limine regarding other accidents and/or lawsuits, the expert opinion of Dr. Sisson, and the application of *res ipsa loquitor* and the spoilation doctrine. [Doc. Nos. 28, 30, 32 & 33].